UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA DORROUGH,                           Case No. 11-12447

          Plaintiff,                          Gerald E. Rosen

v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Michael Hluchaniuk
                                            United States Magistrate Judge
          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 18, 21)**

## I.    PROCEDURAL HISTORY

    A.    Proceedings in this Court

On June 6, 2011, plaintiff filed the instant suit seeking judicial review of the

Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Gerald E.

Rosen referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of supplemental

security income benefits.  (Dkt. 3).  This matter is before the Court on cross-

motions for summary judgment.  (Dkt. 18, 21).

    B.    Administrative Proceedings

Plaintiff filed the instant claims on January 25, 2007, alleging that she

became unable to work as of September 20, 1990.  (Dkt. 10-5, Pg ID 155).  The

claim was initially disapproved by the Commissioner on May 24, 2007.  (Dkt. 10-

4, Pg ID 91-94).  Plaintiff requested a hearing and on September 2, 2009, plaintiff

appeared with counsel before Administrative Law Judge (ALJ) Roy L. Roulhac,

who considered the case *de novo*.  In a decision dated November 4, 2009, the ALJ

found that plaintiff was not disabled.  (Dkt. 10-2, Pg ID 49-59).  Plaintiff

requested a review of this decision on January 11, 2010.  (Dkt. 10-2, Pg ID 48).

The ALJ's decision became the final decision of the Commissioner when, after the

review of additional exhibits[1] (Dkt. 10-2, Pg ID 41-42), the Appeals Council, on

April 8, 2011, denied plaintiff's request for review.  (Dkt. 10-2, Pg ID 38-40);

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

---

[1] In this circuit, where the Appeals Council considers additional evidence
but denies a request to review the ALJ's decision, since it has been held that the
record is closed at the administrative law judge level, those "AC" exhibits
submitted to the Appeals Council are not part of the record for purposes of judicial
review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r
of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court
review of the administrative record is limited to the ALJ's decision, which is the
final decision of the Commissioner, the court can consider only that evidence
presented to the ALJ. In other words, Appeals Council evidence may not be
considered for the purpose of substantial evidence review.

**REVERSED**, and that this matter be **REMANDED** for further proceedings.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 40 years of age at the time of the most recent administrative

hearing.  (Dkt. 10-2, Pg ID 69).  Plaintiff has no past relevant work history.  (Dkt.

10-2, Pg ID 57).  In denying plaintiff's claims, defendant Commissioner

considered asthma and high blood pressure as possible bases of disability.  (Dkt.

10-6, Pg ID 169).

The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity since

January 25, 2007.  (Dkt. 10-2, Pg ID 54).  At step two, the ALJ found that

plaintiff's asthma, hypertension, obesity, and disorder of the back were "severe"

within the meaning of the second sequential step.  *Id.*  At step three, the ALJ found

no evidence that plaintiff's combination of impairments met or equaled one of the

listings in the regulations.  (Dkt. 10-2, Pg ID 55).  At step four, the ALJ found that

plaintiff had no past relevant work.  (Dkt. 10-2, Pg ID 57).  At step five, the ALJ

denied plaintiff benefits because plaintiff could perform a significant number of

jobs available in the national economy.  (Dkt. 10-2, Pg ID 58).

### B.   Plaintiff's Claims of Error

Plaintiff acknowledges that the ALJ discussed SSR 02-1p, but asserts that it

is unclear whether he actually incorporated those policy interpretations into how he viewed the claimant's impairments, in combination with her obesity.  The ALJ recognized that plaintiff had a Body Mass Index (BMI) of 46.9, which he noted "is classified as obesity by the National Institutes of Health (Clinical Guidelines on the Identification, Evaluation and Treatment of Overweight and Obesity in Adults, NIH Publication #98-4083)."  However, plaintiff says the ALJ erred because he never again mentions the claimant's obesity and how it might have further affected plaintiff's condition of asthma, which involves shortness of breath, as well as her hypertension and bilateral knee osteoarthritis.

Next, plaintiff asserts that the ALJ failed to give appropriate weight to the opinions of plaintiff's treating physician, Dr. Frencher.  According to plaintiff, the ALJ merely stated that he had given Dr. Frencher's opinion "appropriate consideration," and that he had not given those "conclusions significant weight," and thus, it is unclear what weight was given.  Plaintiff also contends that the ALJ appears to have inappropriately credited the State Agency physician, who was a non-examining physician, when analyzing whether the claimant met and/or equaled a listed impairment.  (Tr. 18).  However, with regard to Dr. Frencher's opinion, he merely stated that the limitations set forth by Dr. Frencher "are out of proportion with the remaining objective medical evidence contained in the record. There is nothing in the treatment record that would support such limitations."  (Tr.

20).  Plaintiff asserts that this very limited analysis was error and the ALJ failed to give good reasons for the weight according to Dr. Frencher's opinions.  Plaintiff also asserts that the ALJ should have recontacted Dr. Frencher to clarify the bases of his opinions.

Next, plaintiff asserts that the ALJ merely used "opaque boilerplate" for plaintiff's credibility analysis.  *Bjornson v. Astrue*, No. 11-2422 (7th Cir. 2012) (Such boilerplate "yields no clue to what weight the trier of fact gave the testimony" and "more troubling, it appears that the Commissioner has repeatedly been using this same boilerplate paragraph to reject the testimony of numerous claimants, without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand, almost without regard to whether the boilerplate paragraph has any relevance to the case.").  In this case, plaintiff argues that the ALJ merely listed abbreviated information from plaintiff's function report which the ALJ indicates "confirms that the claimant has shortness of breath but does housework, cares for children, cares for personal hygiene, watches television, reads, talks on the phone and spends time with others."  (Tr. 20).  According to plaintiff, the ALJ inaccurately summarized plaintiff's activities and functioning from that report.  First, with regard to housework, plaintiff wrote that she did "none of the above" [the listing of household chores on the form itself] because "I get out of breath quick." (Tr. 138).

With regard to caring for children, the Function Report form indicates she does take care of "my kids," but adds "my kids' daddy come and help me care for them every day cause they are handicap." (Tr. 137). Plaintiff questions how the ALJ could ascertain more than what was written, without questioning the claimant more about this, which he did not do. While the ALJ mentions that she cares for her personal hygiene, but does not describe the problems plaintiff put on the form regarding taking care of herself, which included: When getting half dressed I got to stop to catch my breath; Bathing – When I get in the tub and sit down, I have to catch my breath before I can wash up; Caring for hair – When I comb my hair I have to rest and give myself a breathing treatment; Feeding self – When I eat sometimes I can't finish eating because I be too tired and out of breath to finish eating; Using the toilet – When I go to the bathroom I have to catch my breath before leaving out; and I have to give myself a breathing treatment every 3 hours. (Tr. 137).

As to the vocational testimony, plaintiff not only objects to the failure to include the limitations imposed by Dr. Frencher, but also points out that the VE was not allowed to fully explain the impact of the lack of a high school diploma or GED would have on the number of jobs available. For this reason, plaintiff says remand is necessary because it is unclear how many jobs would have remained had the VE taken the lack of high school diploma or GED into account.

C.     The Commissioner's Motion for Summary Judgment

According to the Commissioner, the ALJ recognized that plaintiff had very serious functional limitations, finding that she could only perform a limited range of sedentary work.  Social Security Ruling 96-9p, 1996 WL 374185, at *3 ("Under the regulations, "sedentary work" represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations.").  Nonetheless, the Commissioner contends that the ALJ properly found plaintiff's functional limitations did not preclude all work.  Social Security Ruling 96-9p, 1996 WL 374185, at *4 (noting that an ability to perform less than the full range of sedentary work does not equate to a finding of disability).  According to the Commissioner, the ALJ reasonably accommodated plaintiff's complaints by restricting her to sedentary work and providing for a sit/stand option, limiting plaintiff to jobs where she could sit or stand at will.  (Tr. 18).  The Commissioner points out that, at the hearing, plaintiff admitted that she could sit for most of the day; she could carry and lift about 10 to 15 pounds; walk approximately one block; and stand for 15 to 20 minutes.  (Tr. 37-38).  Given plaintiff's admitted functional abilities, the Commissioner maintains that plaintiff failed to meet her burden to show that more restrictive limitations than those provided by the ALJ were warranted.

The Commissioner also disagrees with plaintiff's suggestion that Social Security Ruling 02-1p requires a specific mode of analysis for obesity.  Rather, as the Sixth Circuit has held, compliance with SSR 02-1p only requires demonstration that the ALJ "considered" obesity.  *See Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411-12 (6th Cir. 2008).  "Social Security Ruling 02-01p does not mandate a particular mode of analysis.  It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants."  *Id*.  Here, like in *Bledsoe*, the Commissioner asserts that the ALJ explicitly mentioned obesity in his discussion of the medical records and recognized that plaintiff's obesity was a severe impairment that resulted in more than minimal work-related functional limitations.  (Tr. 17).  Further, at the hearing, the ALJ made additional comments to the vocational expert that clearly evidence consideration of obesity and its effect on plaintiff's limitations.  Specifically, the ALJ found plaintiff should avoid unprotected heights secondary to obesity.  (Tr. 40).  According to the Commissioner, the ALJ's multiple explicit considerations of obesity satisfy the requirements of Social Security Ruling 02-1p.  *See Bledsoe*, 165 Fed.Appx. at 411-12 .

As an initial matter, the Commissioner asserts that plaintiff incorrectly

suggests that the ALJ relied on the opinion of a State Agency non-examining physician over the opinion of treating physician, Dr. Frencher.  Rather, the ALJ gave the State Agency physician's opinion only "limited weight," finding plaintiff's limitations to be greater than those opined by State Agency physician (Tr. 20).   The Commissioner also says that the ALJ reasonably weighed the opinions of plaintiff's treating physician, Dr. Frencher. In a note dated January 23, 2007, Dr. Frencher noted that plaintiff was limited in her ability to walk or stand for long periods of time.  (Tr. 173).  The ALJ accommodated this opinion by limiting plaintiff to a limited range of sedentary work as well as providing for a sit/stand option.  (Tr. 18).  Dr. Frencher also completed a physical residual functional capacity assessment, dated September 8, 2009, noting that plaintiff had significant physical limitations, experiences constant pain, is incapable of even low stress jobs, and would be absent more than 4 days per month due to her impairments or treatment.  (Tr. 209-13).  According to the Commissioner, the ALJ reasonably declined to give Dr. Frencher's September 2009 opinion significant weight because the opinion was inconsistent with and unsupported by the record. Specifically, the ALJ found the identified limitations out of proportion with the objective medical evidence contained in the record and noting an absence of any support in Dr. Frencher's treatment record that would support the limitations he opined for plaintiff.  One key factor identified by the ALJ in weighing Dr.

Frencher's opinion was plaintiff's repeated statements to Dr. Frencher that she had "no complaints." (Tr. 20). As the ALJ explained, he would expect someone with plaintiff's alleged level of limitations to have a record of consistent complaints throughout her treatment history. (Tr. 20). Additionally, Dr. Frencher's notes demonstrate that plaintiff would complain if she had any problems. In early 2007, plaintiff complained of shortness of breath. (Tr. 194, 196). She reported that she was better in April 2007. (Tr. 197). Then, over the next two years, plaintiff told Dr. Frencher she had "no complaints." (Tr. 198-201, 203-05). According to the Commissioner, the lack of complaints over the course of several years speaks to multiple factors, namely consistency and supportability, as well as nature and extent of treatment. The ALJ also pointed to Dr. Frencher's opinion as being out of proportion with the evidence given that Dr. Frencher repeatedly found plaintiff's asthma to be "stable" or "asymptomatic." (Tr. 20). Additionally, although Dr. Frencher noted that plaintiff's hypertension was uncontrolled in October 2008, Dr. Frencher found that it was under control in April 2009. (Tr. 20). Additionally, the ALJ noted that plaintiff did not experience any asthma attacks requiring treatment at an urgent care facility or doctor's office since 2006. (Tr. 20). Thus, the Commissioner contends that it was reasonable for the ALJ to conclude that Dr. Frencher's findings that plaintiff's condition was "stable," "asymptomatic," and in control, along with the absence of attacks requiring urgent

care, were out of proportion with an opinion that suggested an inability to work and absence from work four or more days per month.  (Tr. 20).

As to plaintiff's credibility, the Commissioner assets that the ALJ accepted that plaintiff's symptoms affected her abilities and provided a reasonable explanation supported by substantial evidence in the record, for partially discrediting plaintiff's allegations regarding her limitations.  (Tr. 19-20).  Plaintiff testified that she could not work because of her asthma symptoms (Tr. 35-37). While the ALJ accepted that plaintiff's asthma would affect her abilities, the ALJ found plaintiff's allegations that her limitations were work-preclusive to be inconsistent with and unsupported by the record evidence.  (Tr. 19-20). Specifically, he consistency of a claimant's statements, both internally and with other information in the case record is a strong indication of credibility.  Contrary to plaintiff's argument, the Commissioner contends that the ALJ did not merely use boilerplate language to evaluate plaintiff's credibility; rather, he reasonably explained that he partially discredited plaintiff by explicitly citing to several examples of record evidence inconsistent with allegations of work-preclusive asthma.  (Tr. 19-20).

According to the Commissioner, plaintiff only contests the ALJ's consideration of her daily activities when weighing her credibility, and, contrary to plaintiff's suggestion, the ALJ did not use plaintiff's daily activities as evidence of

her ability to work.  (Tr. 20).  Instead, the ALJ noted there were inconsistencies in

the severity of plaintiff's reported limitations and her daily activities.  (Tr. 20).

Plaintiff disputes those inconsistencies by citing only to one piece of evidence,

plaintiff's adult functional report. However, the ALJ cited to both plaintiff's

testimony and to plaintiff's functional report.  (Tr.19-20).  During the hearing,

plaintiff testified that she that did some housework, including washing the dishes.

(Tr. 38).  Thus, it was reasonable for the ALJ to consider plaintiff's daily activities

and find those activities – housework, care for her children – to be inconsistent

with her reported functional abilities.  (Tr. 20).  The Commissioner also points out

that plaintiff's daily activities were only one of several factors the ALJ considered

in weighing her testimony.  The ALJ also cited to several additional pieces of

record evidence that were inconsistent with the severity of symptoms described by

plaintiff, including an asthma report completed by plaintiff as part of her

application for disability, in which she said she had not had an asthma attack

requiring treatment in a doctor's office or urgent care facility since 2005.  (Tr. 20,

citing Tr. 134).  The ALJ also pointed out that during a phone interview, a field

office representative noted that plaintiff had no difficulty with breathing,

concentrating, talking, or answering questions.  (Tr. 19-20, citing Tr. 125-26).

And, the ALJ referred to treatment records where plaintiff repeatedly told her

doctor that she had "no complaints."  (Tr. 20).  While the ALJ recognized there

were occasions where Dr. Frencher found plaintiff's hypertension "uncontrolled," the ALJ noted Dr. Frencher found plaintiff's hypertension to be "stable" in April 2009. (Tr. 20). Dr. Frencher also found plaintiff's asthma to be "stable" and "asymptomatic." (Tr. 19-20). In light of these inconsistencies, the Commissioner maintains that the ALJ's explanation for partially discrediting plaintiff was reasonable and supported by substantial evidence in the record as the record evidence suggested plaintiff's condition was not as severe as alleged.

As to plaintiff's claim of a defect in the vocational expert testimony, the Commissioner first points out that plaintiff's counsel cross examination of the vocational expert at the hearing was convoluted, at best. (Tr. 41-42). The Commissioner also contends that plaintiff's excerpts from the transcript are incomplete and omit portions of the vocational expert's testimony, including the portion where the vocational expert clarifies her response. (Tr. 40). Plaintiff's cross examination appears to question the effect that plaintiff's education would have on the number of available jobs. (Tr. 41-42). Plaintiff completed the eleventh grade, but did not have a high school diploma or a GED. (Tr. 33). Plaintiff's counsel's line of questioning regarding plaintiff's education was moot. As the vocational expert clarified, her opinion was based on the hypothetical given by the ALJ. (Tr. 41). The hypothetical posed by the ALJ asked the vocational expert to assume someone with plaintiff's vocational profile (i.e., age, education,

and work experience).  (Tr. 40).  Additionally, as the vocational expert pointed

out, plaintiff's counsel failed to specify whether she wanted to know if plaintiff's

educational level would affect the number of available jobs or she wanted to know

whether it would affect plaintiff's competitiveness for the available jobs.  (Tr. 41).

According to the Commissioner, plaintiff's competitiveness for the available jobs

is an irrelevant inquiry for disability purposes.  While plaintiff suggests that the

vocational expert's testimony left open the issue of the effect that plaintiff's

education would have on the number of available jobs, the vocational expert made

it clear that she gave an opinion based on the hypothetical  posed by the ALJ,

which took plaintiff's education into account.  (Tr. 41).

Even assuming for sake of argument that the vocational expert's testimony

was not clear regarding plaintiff's education, the Commissioner argues that,

according to the Dictionary of Occupational Titles (DOT), the jobs identified by

the vocational expert would not necessarily require a high school diploma or a

GED.  Indeed, the General Educational Development requirements of the

identified jobs were minimal.  *See* DOT, Gauger (Code 712.687-018) available at

http://www.occupationalinfo.org/71/712687018.html; DOT, Assembler (Code

734.687-018) available at http://www.occupationalinfo.org/73/734687018.html;

DOT, Surveillance System Monitor (Code 379.367-010), available at

http://www.occupationalinfo.org/37/379367010.html.  In fact, the assembler

position required only the most basic level, level one, for reading, mathematics, and language development.  And, all of the jobs required minimal specific vocational preparation, less than one month.  *See* DOT, Appx C: Components of the Definition Trailer, http://www.occupationalinfo.org/appendxc_1.html#II. Given the minimal educational and  preparation requirements of the identified jobs combined with the ALJ limiting plaintiff to unskilled jobs that required only simple tasks, any error committed by the ALJ in relying on the vocational expert's testimony was harmless.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

    B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed

to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

As to plaintiff's complaint that the ALJ did not properly consider her obesity, the undersigned finds no basis to disturb the ALJ's decision. Obesity, by itself of course, does not constitute a disability. SSR 02-1p. Nonetheless, the condition must be considered in combination with other impairments in determining whether the claimant is disabled. *Id*. The administrative findings need not contain an explicit reference to the claimant's obesity if the decision as a whole appears to have adopted limitations resulting from the condition. *Coldiron v. Commissioner of Social Security*, 2010 WL 3199693, *7 (6th Cir. 2010), citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Here, the ALJ expressly examined the effects of plaintiff's obesity and included particular limitations in the RFC based on plaintiff's obesity. Plaintiff points to no evidence in the record to support her claim that she was further limited by her obesity than as found by the ALJ. Thus, the undersigned finds no basis to disturb the ALJ's findings on this

basis.

As to the ALJ's treatment of Dr. Frencher's opinion, the undersigned concludes that the ALJ properly did not give his opinions controlling weight. There is virtually no support in Dr. Frencher's office notes and records supporting the severe limitations imposed on plaintiff and there is little objective medical evidence, test results, etc. to support his opinion. Rather, Dr. Frencher and plaintiff appear to conclude that simply because plaintiff suffers from a certain condition or carries a certain diagnoses, she is disabled. However, a diagnosis or condition does not equate to disability or a particular RFC. Rather, the residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). Thus, the mere existence of any condition from which

plaintiff may have suffered does not necessarily establish any functional limitation or disability.  Thus, the ALJ's decision to give little weight to Dr. Frencher's opinion is supported by substantial evidence in the record.

However, the undersigned is troubled by the ALJ's failure to recognize that the "medical opinions of the State agency and consultative physician" (Tr. 18) were not medical opinions at all, but rather, were the opinions of a disability examiner named Patrick Sullivan, a non-physician, acting pursuant to 20 C.F.R. §§ 404.906(b)(2).  (Tr. 50, 174-181).  This regulation provides streamlined procedures as an experiment, in which State Agency disability examiners may decide cases without documenting medical opinions from State Agency medical consultants.  The "single decisionmaker model" was an experimental modification of the disability determination process that happens to have been used in Michigan.  *See Leverette v. Comm'r*, 2011 WL 4062380 (E.D. Mich. 2011).  This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing.  *Id*.  Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants.  *Id*., citing 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2).  The Programs Operations Manual System (POMS) requires it to "be clear to the appeal-level adjudicator when the SSA–4734–BK [the PRFC assessment form]

was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels."  POMS DI § 24510.05.  Here, the form was clear that Mr. Sullivan was not a physician, but the ALJ clearly believed that he was a physician, given the statements in the decision.

However, in the equivalency evaluation, the ALJ gave Mr. Sullivan's opinion less than controlling weight, finding plaintiff to be more restricted than he opined in the PRFC.  The question is whether the ALJ's error in not recognizing that Mr. Sullivan was not a physician was harmless.  As set forth in *Stratton v. Astrue*, — F.Supp.2d —; 2012 WL 1852084, *11-12 (D. N.H. 2012), SSR 96-6p describes the process by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge ... is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, *longstanding policy requires that the judgment of a physician* (or psychologist) designated by the Commissioner *on the issue of equivalence on the evidence* before the administrative law judge ... *must be received into the record as expert opinion evidence and given appropriate weight.*

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical

judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)); *Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. 2011) (warning that an ALJ who makes a step-three equivalence determination without expert-opinion evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter.  *Id.* at. *12; citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted).  This expert opinion requirement can be satisfied by a signature on the Disability Determination Transmittal Form.  *Stratton*, at *12, citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96–6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form)."); *Field v. Barnhart*, 2006

WL 549305, at *3 (D. Me. 2006) ("The Record contains a Disability Determination and Transmittal Form signed by Iver C. Nielson, M.D .... discharging the commissioner's basic duty to obtain medical-expert advice concerning the Listings question."). In this case, there is no such signature on the Disability Determination and Transmittal Form. (Tr. 50). The great weight of authority[2] holds that a record lacking any medical advisor opinion on equivalency requires a remand. *Stratton*, at *13 (collecting cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. 2010) (directing ALJ to obtain expert-opinion evidence on equivalence where none was in the record); *Wadsworth v. Astrue*, WL 2857326, at *7 (S.D. Ind. 2008) (holding that where record included no expert-opinion evidence on equivalence, "[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether Mr. Wadsworth's impairments equaled a listing"). While there is support that such an error can be harmless and the undersigned is not necessarily convinced that plaintiff can show her impairments satisfy the equivalency requirements, "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [plaintiff]'s

---

[2]  In *Stratton*, the court noted that a decision from Maine "stands alone" in determination that 20 C.F.R. § 404.906(b) "altered the longstanding policy that na ALJ is required to seek a medical opinion on the issue of equivalence." *See Goupil v. Barnhart*, 2003 WL 22466164, at *2 n. 3 (D. Me. 2003). Notably, the present circumstances does not involve whether the ALJ is required to obtain an *updated* medical advisor opinion. *See e.g.*, *Lyke v. Astrue*, 2011 WL 2601435 (M.D. Tenn. 2011.

impairments ... in combination equal one of the Commissioner's listings."
*Freeman v. Astrue*, 2012 WL 384838, at *4 (E.D. Wash. 2012).  For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence. Given this conclusion, plaintiff's credibility will necessarily require re-evaluation.

As to plaintiff's claim that the vocational expert failed to account for plaintiff's educational level, it is clear from the transcript that plaintiff's educational level was accounted for in the hypothetical posed by the ALJ, given that the hypothetical included a person of plaintiff's "vocational profile."  (Tr. 40). The ALJ has specifically questioned plaintiff regarding her education and she explained that she had completed the eleventh grade, but had not graduated from high school.  (Tr. 33).  For this reason, the undersigned fails to see any error in this regard.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

Report and Recommendation
Cross-Motions for Summary Judgment
*Dorrough v. Comm'r*; Case No. 11-12447

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 10, 2012                         s/Michael Hluchaniuk
                                              Michael Hluchaniuk
                                              United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 10, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Eva I. Guerra, Susan K. DeClercq, AUSA, and the Commissioner of Social Security</u>.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov
